**Jennifer GREENLEAF, by her father and next friend Randall GREENLEAF, Plaintiff,**

v.

**Ronald COTE, Defendant.**

**No. Civ. 98–250–B.**

United States District Court, D. Maine.

Nov. 23, 1999.

Randall P. Greenleaf, Litchfield, ME, plaintiff pro se on behalf of Jennifer Greenleaf.

Melissa A. Hewey, Drummond, Woodsum & MacMahon, Portland, ME, for defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

This matter is before the Court for decision following a bench trial on November 16, 1999. Randall Greenleaf brings this action on behalf of his daughter, Jennifer Greenleaf ("Jennifer"), pursuant to 42 U.S.C. § 1983. He alleges that, on March 11, 1998, the Defendant, Principal Ronald Cote ("Cote"), violated Jennifer's Fourth Amendment Rights under the United States Constitution when he conducted an unreasonable search of Jennifer, a student at Cote's school. Having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the memoranda and arguments of both parties, the Court makes the following findings of fact and conclusions of law as required by Fed. R.Civ.P. 52.

## FINDINGS OF FACT

On March 11, 1998, at the Carrie Ricker Middle School in Litchfield, Maine, a female student overheard two eighth-grade female students talk about how, earlier in that school day, they had been drinking beer in the girls' locker room. In the course of this overheard conversation, one of these students disclosed the names of the two other students with whom they had been drinking beer. One of those students named was Jennifer Greenleaf. Shortly after overhearing this conversation, the student notified a school staff member of what she had heard. The student-informant specifically recounted that she had heard two girls discuss that they had been drinking beer with two others, and she disclosed the names of the four alleged participants. The staff member then alerted the school's vice-principal, Cathy McCue ("McCue"), of what the student-informant had revealed.

Since the student-informant was a trustworthy student who had previously provided the administration with accurate information regarding student conduct, McCue had reason to trust the report. McCue proceeded to tell the Principal Cote about the four named students alleged to have been drinking in the school that morning. While they had no basis to suspect that the named students had previously consumed alcohol on school grounds, the student-informant's report did lend credence to growing concerns about drinking and drug use in the school. Prior to the report, members of the community had informed

the school administration of drinking and drug use by students, and administrators and teachers themselves had overheard students discussing this problem. Although they had not caught any student using drugs or alcohol at the school, they had previously uncovered possible drug paraphernalia in the student bathrooms. Given all this information, Cote and McCue believed that they had a reasonable basis to search the four students for evidence of beer drinking, which might include beer cans and bottles, as well as bottle caps and openers.

Having never conducted a search at the Carrie Ricker School, Cote and McCue first decided to call the principal at the local high school to get some advice on the propriety of and protocol for conducting a search in this instance. Concluding that Cote had reasonable grounds to conduct a search, the local high school principal told Cote that he should ask the students to open up their backpacks and lockers, turn out their pockets, take off their shoes, and unroll their socks. If the students would not consent to such a search, this principal told Cote, he should end the search.

Following this advice, Cote and McCue proceeded to search the four students, including Jennifer, sometime after lunch on that school day. Cote and McCue went to Jennifer's classroom, where McCue asked her to come into the hallway. Since classes were in session, no one was in the hallway at that time. Nevertheless, in order to ensure privacy, either Cote or McCue shut various doors in the hallway to prevent students from entering that particular section. After closing these doors, either Cote or McCue asked Jennifer to open her locker and backpack, to turn out her pockets in her pants and jacket, and to shake her shirt and pants. The Court is not persuaded that Jennifer was asked to shake out her bra as claimed by Jennifer. They never told Jennifer why they made these requests, and they

did not inform her of the object of the search. Nonetheless, Jennifer complied with their request. At one point during the search, a small four-by-six-inch denim bag fell out of Jennifer's backpack, leading her to utter nervously, "ummm ... ummm". Recognizing that this bag might contain feminine hygiene products, Cote turned and walked away from Jennifer and McCue. McCue and Jennifer then stepped into the doorway of an unoccupied room, where McCue inspected the bag for any evidence of beer drinking. Neither Cote nor McCue ever touched Jennifer during the search. They found no evidence of beer drinking.

## CONCLUSIONS OF LAW

■ In order to satisfy the Fourth Amendment's safeguards, a search must be "justified at its inception" and reasonable in its scope. *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

### A. Justified At Its Inception

■ In order for a search to be justified at its inception, there must be "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, 469 U.S. at 342, 105 S.Ct. 733. The Court concludes that Defendant Cote had such grounds. First, the student-informant was reliable, as demonstrated by her prior discussions with school officials. Second, the students who were overheard by the student-informant participated in the beer drinking. The student-informant, therefore, was not reporting mere rumor or gossip, but the admissions by students that they had been drinking that morning in the girls' locker room with Jennifer. Third, given the reports from the community and the discovery of possible drug paraphernalia, Cote had reason to be concerned about drinking and drug use at the school.[1]

---

1. In hindsight, it would have been more ap-    propriate for the administrators, immediately

## B.  Reasonable in Scope

■ "[A] search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.* 469 U.S. at 342, 105 S.Ct. 733.  The Court concludes that the search was reasonable in its scope.  First, evidence of beer drinking could be found in the places searched.  Second, Jennifer consented to the search.  Third, if Jennifer refused to consent to the search, the protocol the administrators followed in conducting the search called for ending the search.  Fourth, the search was conducted in the hallway, an area that was private at the time since classes were in session and hallway doors closed off that particular section to pedestrian traffic.  Fifth, neither Cote nor McCue touched Jennifer during the search, which was generally unobtrusive.  Finally, Cote turned and walked away during the search of Jennifer's small denim bag.

For the foregoing reasons, the Court concludes that Defendant's search of Plaintiff did not violate the Fourth Amendment, as construed in *New Jersey v. T.L.O.* Judgment for Defendant.

*SO ORDERED.*

---

prior to undertaking the search, to question Jennifer about the incident, to notify her of the object of the search, and to inform her that she was not required to consent to the search.  The failure of the administrators to take these actions, however, does not, given the other factors in this case, make the search unjustified at its inception.